# EXHIBIT A

## UNSECURED LOAN AGREEMENT

This LOAN (as the same now exists or may hereafter be amended, amended and restated, modified, supplemented, extended, renewed, restated or replaced, the "Agreement") is entered into as of July 30, 2018 by and between DIVERSE MEDICAL MANAGEMENT., a ____ corporation ("Borrower"), and THE THIRD FRIDAY TOTAL RETURN FUND, L.P., a Delaware limited partnership ("Lender").

### RECITALS

WHEREAS, Borrower has requested that Lender make available to Borrower a Loan (as defined below) as more fully set forth herein and the parties wish to provide for the terms and conditions upon which the Loan shall be made.

WHEREAS, Lender is willing to make the Loan available to Borrower upon the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of mutual covenants and agreements contained herein, and intending to be legally bound hereby, the parties hereby covenant and agree as follows:

### AGREEMENT

1. *Loan*.

    (a) Subject to the terms and conditions of this Agreement, on the date hereof, Lender shall make a term loan to Borrower in a principal amount equal to $100,000 (the "Loan"). Upon Lender's receipt of this executed Agreement, the Loan shall be disbursed to Borrower at the account designated below in immediately available funds in cash or currency of the United States of America. Amounts repaid with respect to the Loan may not be reborrowed.

    Bank: First National Bank
    200 East Main St.
    McMinnville, TN 37110
    ABA Routing Number: ███
    Account Number: ███
    Account Name: Diverse Medical Management

    (b) Borrower promises to pay to Lender at the account designated below or such other account designated in writing by Lender, the principal amount of the Loan together with interest thereon calculated in accordance with the provisions of this Agreement, in cash or currency of the United States of America.

    Bank: First Republic Bank
    ABA Routing Number: ███
    Account Number: ███
    Account Name: The Third Friday Total Return Fund, L.P.
    Reference: Diverse Medical

2. *Interest*. Interest shall accrue on the unpaid principal amount of the Loan outstanding from time to time from and including the date hereof until the date the outstanding principal and accrued

and unpaid interest on the Loan is paid in full at a rate per annum equal to six percent (6%). Interest shall be computed on the basis of the actual number of days elapsed over a year consisting of 365 days.

3. Principal Payments. The principal amount of the Loan plus all accrued but unpaid interest shall be payable in full on the earlier of (i) December 31, 2018 (the "Maturity Date") and (ii) acceleration of the maturity of the Loan upon the occurrence of an Event of Default (as hereinafter defined) in accordance with Section 9 hereof. Borrower shall have the right at any time and from time to time to prepay, in whole or in part, without premium or penalty, the unpaid principal amount of the Loan and accrued interest on such amount. Any such voluntary prepayments shall be applied first to reduce accrued but unpaid interest on the outstanding principal of the Loan and then to reduce the outstanding principal amount of the Loan. The parties may extend the maturity date by mutual agreement in a written amendment to this Agreement signed by both parties.

4. Payment Dates. Notwithstanding anything contained herein to the contrary, in the event that the Maturity Date or any other date on which payment is due hereunder is on a date that is not a Business Day, then the payment shall be due and payable on the first Business Day following such date. For purposes of this Agreement, the term "Business Day" means any day other than a Saturday, Sunday, legal holiday or day on which banks are authorized or permitted to be closed in the State of Florida.

5. Representations and Warranties. Borrower represents and warrants that as of the date of this Agreement, (a) Borrower has the power and authority to execute and deliver this Agreement and to perform all of his obligations under this Agreement, (b) this Agreement has been duly executed and delivered by Borrower and is the legal, valid, binding obligation of Borrower, enforceable against Borrower in accordance with its terms (subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless whether considered in a proceeding at equity or in law) and (c) Borrower has not granted any lien, security interest or other encumbrance on the Collateral, other than those granted hereby.

6. Event of Default. Borrower shall be in default under this Agreement upon the occurrence of any of the following events of default (each, an "Event of Default"):

    (a) the failure to pay any amount of the principal or interest due on this Agreement within five Business Days of when such amount is due; or

    (b) Borrower (i) files, or consents by answer or otherwise to the filing against it of, a petition for relief or reorganization or arrangement or any other petition in bankruptcy, for liquidation or to take advantage of any bankruptcy, insolvency, reorganization, moratorium or other similar law of any jurisdiction, (ii) makes an assignment for the benefit of its creditors, (iii) consents to the appointment of a custodian, receiver, trustee or other officer with similar powers with respect to it or with respect to any substantial part of its property, (iv) is adjudicated as insolvent or to be liquidated, or (v) takes action for the purpose of any of the foregoing or for the liquidation, dissolution or winding up of Borrower; or

    (c) a court or governmental authority of competent jurisdiction enters an order appointing, without consent by Borrower, a custodian, receiver, trustee or other officer with similar powers with respect to it or with respect to any substantial part of its property, or constituting an order for relief or approving a petition for relief or reorganization or any other petition in bankruptcy or for liquidation or to take advantage of any bankruptcy or insolvency law of any jurisdiction, or ordering the dissolution, winding up or liquidation of Borrower, or any such petition shall be filed against Borrower and such petition shall not be dismissed within 60 days; or

2

(d)   Borrower shall contest in any manner the validity, binding nature or enforceability of Lender's lien on and security interest in the Collateral.

Promptly upon becoming aware of any Event of Default set forth in Section 7(b), (c), or (d) above, and in any event within five Business Days, Borrower shall provide Lender written notice of the occurrence of such Event of Default.

7.   Default Rate.  Upon the occurrence of an Event of Default, the then entire outstanding principal balance of the Loan, together with all accrued and unpaid interest, may, at Lender's option, accrue interest until such Event of Default is cured, payable on demand, at a rate per annum equal to the lesser of (a) 2% per annum above the interest rate otherwise in effect or (b) the maximum interest rate permitted under applicable law.

8.   Acceleration; Remedies.

(a)   Upon the occurrence of any Event of Default defined in Sections 7(a) or 7(d), and at any time thereafter as long as any such Event of Default shall be continuing, Lender may declare all liabilities and obligations of Borrower under this Agreement immediately due and payable and the same shall thereupon become immediately due and payable without any further action on the part of Lender.  Upon the occurrence of any Event of Default defined in Sections 7(b) or 7(c), all liabilities and obligations of Borrower under this Agreement shall become immediately due and payable.

9.   Notices.  Any notice or other communication provided for herein or given hereunder to a party hereto must be in writing, and (a) sent by facsimile transmission (with confirmation of successful transmission) or e-mail, (b) delivered in person, (c) mailed by first class registered or certified mail, postage prepaid, or (d) sent by overnight courier of national reputation, addressed as follows:

Notices to Borrower:

Diverse Medical Management
PO Box 188
McMinnville, TN 37111
Attn: Nancy Golden
Email address: ▮
Tel ▮

Notices to Lender:

The Third Friday Total Return Fund, L.P.
85 N. Congress Avenue
Delray Beach, FL 33445
Attention: Michael E. Lewitt
E-mail address: ▮
Fax: ▮

or to such other address, facsimile number or e-mail address as a party may notify the other in writing as above provided.

10.   Register.  Borrower shall maintain a register of the holders of the Loan as to both principal and stated interest and promptly reflect therein all transfers of the Loan.  Any transferee of the

3

Loan shall notify Borrower of such transfer, and upon entry by Borrower of such transfer in the register described in the preceding sentence, succeed to all of the rights of Lender under this Agreement and shall be deemed to be the "Lender" for all purposes of this Agreement as of the date of such transfer. Any purported transfer of this Agreement that does not comply with the foregoing shall be null and void and of no effect. Borrower may treat the registered Lender of this Agreement as he, she or it appears on Borrower' books at any time as the Lender for all purposes.

11. Successors and Assigns. This Agreement shall bind Borrower and its successors and permitted assigns, and the benefits of this Agreement shall inure to the benefit of Lender and his successors and permitted assigns; provided that, this Agreement may not be assigned by Borrower or Lender without the prior written consent of Lender or Borrower, as applicable. All references herein to the "Borrower" and the "Lender" shall be deemed to apply to Borrower and Lender, respectively, and to their respective successors and permitted assigns.

12. Amendments and Waivers. Except as otherwise provided in this Agreement, no modification or amendment hereof, or waiver or consent hereunder, shall be effective unless made in a writing signed by appropriate officers of each of Borrower and Lender, or their respective successors and assigns.

13. Interest Rate Limitation. Nothing contained in this Agreement or any transaction related to this Agreement, shall be construed or so operate as to require Borrower to pay interest at a greater rate than is now lawful or in such case to contract for, or to make any payment, or to do any act contrary to applicable law. Should any interest or other charges paid by Borrower, or parties liable for the payment of this Agreement, in connection with the indebtedness evidenced by this Agreement or any other document delivered in connection with this Agreement, result in the computation or earning of interest in excess of the maximum legal rate of interest that is legally permitted under applicable law, then any and all such excess shall be, and the same hereby is, waived by Lender, and any and all such excess shall be automatically credited against and in reduction of the balance due under this Agreement, and the portion of said excess that exceeds the balance due under this Agreement shall be paid by Lender to Borrower.

14. Collection and Enforcement Costs. If the Loan and other amounts owing hereunder shall not be paid in full whenever it shall become due, Borrower agrees to pay all reasonable costs and expenses of collection and enforcement incurred by Lender, including without limitation court costs and reasonable attorneys' fees.

15. Waiver. Borrower hereby waives presentment, demand, notice of nonpayment, protest, notice of protest, notice of dishonor and any and all other notices in connection with any default, or any enforcement of the obligations under this Agreement. To the extent permitted by law, Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. Borrower hereby waives any requirement that Lender marshal the Collateral. No delay on the part of Lender in the exercise of any right, power or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy preclude any other or further exercise thereof, or the exercise of any other right, power or remedy.

16. WAIVER OF JURY TRIAL. Each of Borrower and Lender mutually hereby knowingly, voluntarily and intentionally waive the right to a trial by jury in respect of any litigation based on this Agreement or any course of conduct, course of dealings, statements (whether verbal or written) or actions of any party. This waiver constitutes a material inducement for Borrower and Lender to enter into the transactions contemplated hereby.

4

17. **Governing Law, Venue and Service of Process.** All matters relating to the interpretation, construction, validity and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Florida without giving effect to any choice or conflict of law provision or rule (whether of the State of Florida or any other jurisdiction) that would cause the application of laws of any jurisdiction other than the State of Florida. Venue for any dispute that arises under or with respect to this Agreement shall be exclusively in the State and federal courts located in the State of Florida. Each party hereto hereby expressly consents to the personal jurisdiction of such courts in such dispute and irrevocably waives any objection to such venue based on forum nonconveniens or other rule of law. Each of Borrower and Lender waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and shall confer personal jurisdiction if served by registered or certified mail in accordance with Section 10 hereof.

18. **Severability.** If any provision of this Agreement is in conflict with any statute or rule of law of the State of Delaware or is otherwise unenforceable for any reason whatsoever, then such provision shall be ineffective to the extent of such invalidity and shall be deemed separable from and shall not invalidate any other provision of this Agreement.

*[Signature Follows On Next Page]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

BORROWER:	DIVERSE MEDICAL MANAGEMENT

By: _____
Michael Frey, President


LENDER:	THE THIRD FRIDAY TOTAL RETURN FUND, L.P.

By: _____
Michael Lewitt, Manager, Third Friday GP, LLC

NAI-1503338281v2