| | | |
|---|---|---|
| DIVERSE MEDICAL MANAGEMENT, INC.; AND AZZAM MEDICAL SERVICES, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No: 19-CV-00046 |
| PLATINUM GROUP USA, INC.; AMER RUSTOM; THE THIRD FRIDAY TOTAL RETURN FUND, L.P., MICHAEL LEWITT, AMERICORE HEALTH, LLC, GRANT WHITE, JAMES B. BIDEN, | ) ) ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) | |
| PLATINUM GROUP USA, INC.; THE THIRD FRIDAY TOTAL RETURN FUND., L.P., | ) ) ) ) | |
| Counterclaim Plaintiffs, | ) | |
| v. | ) ) | |
| DIVERSE MEDICAL MANAGEMENT, INC.; MICHAEL FREY; NATALIE FREY; AND MOHANNAD AZZAM, | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**DIVERSE MEDICAL MANAGEMENT, INC.'S, REPLY TO COUNTERCLAIM OF
<u>PLATINUM GROUP USA, INC. AND THE THIRD FRIDAY FUND, L.P.</u>**

For its Reply to the Counterclaim filed by Counter-Plaintiffs The Platinum Group USA ("Platinum") and The Third Friday Total Return Fund, L.P. ("Third Friday Fund"), Counter-Defendant Diverse Medical Management, Inc. ("DMM") states and alleges as follows:

# INTRODUCTION AND GENERAL DENIAL

As described in detail below, the Counterclaim filed by Platinum[1] and Third Friday Fund is divorced from reality and directly contradicted by the oral and written statements of James Biden and Michael Lewitt. DMM provided voluminous documentation during the due diligence period. At no point was any concern raised as to the quality of the information provided by DMM; in fact, the Defendants told DMM on numerous occasions that they were satisfied with the diligence materials and had everything they needed. More importantly, at no point when Defendants were making their repeated promises of imminent and certain investment was any complaint raised, or condition placed, regarding the diligence materials.

As to the GCG/NewCare acquisition, DMM was directed explicitly by James Biden in December of 2018 to make the purchase offer. As laid out below, DMM's leadership kept Defendants updated on the progress of the GCG/NewCare provider transition to the DMM umbrella frequently through the winter and early spring of 2019. Any assertion to the contrary is false and easily refuted by the communications with James Biden and Michael Lewitt, as detailed below.

Finally, the Counterclaim bizarrely attempts to reframe a portion of a text message Michael Frey sent to Lewitt, Biden, and Rustom as something other than it was—taking the excerpt of the text message wildly out of context in the process. In the text message, which is attached to this Reply in its entirety, Michael Frey is clearly detailing the results of Defendants' fraud, i.e., a listing of damages caused by the conspiracy. To claim that this text message is what prevented Defendants from providing the long-promised investment is—to put it as charitably as possible—misleading.

---

[1] It is unclear from the Counterclaim what claim, if any, Platinum attempts to assert against DMM.

02542274 2                                    2

## RESPONSE TO NUMBERED ALLEGATIONS

1. Platinum Group USA, Inc. ("The Platinum Group USA") and the Third Friday Total Return Fund, L.P. ("Third Friday Fund") (collectively, the "Counterclaim Plaintiffs") assert this counterclaim pursuant to Fed. R. Civ. Proc. 13, 19, and 20.

**ANSWER:** DMM admits that Counter-Plaintiffs file their Counterclaim pursuant to Fed. R. Civ. P. 13, but denies that Rules 19 and 20 have any applicability as to the alleged claim against DMM.

2. The Platinum Group USA is a corporation organized and existing under the laws of Florida with its principal place of business in Delray Beach, Florida.

**ANSWER:** Upon information and belief, DMM admits the allegations contained in Paragraph 2 of the Counterclaim.

3. Third Friday Fund is a limited partnership organized and existing under the laws of Delaware with its principal place of business in Delray Beach, Florida.

**ANSWER:** Upon information and belief, DMM admits the allegations contained in Paragraph 3 of the Counterclaim.

4. Diverse Medical Management, Inc. ("DMM") is a Tennessee corporation organized and existing under the laws of Tennessee with its principal place of business in McMinnville, Tennessee.

**ANSWER:** DMM admits the allegations contained in Paragraph 4 of the Counterclaim.

5. Defendant Michael Frey is an adult resident of Tennessee and is the President and Chief Executive Officer of DMM.

**ANSWER:** DMM admits the allegations contained in Paragraph 5 of the Counterclaim.

6. Defendant Natalie Frey is an adult resident of Tennessee and is Executive Vice President – Strategic Planning of DMM.

**ANSWER:** DMM admits the allegations contained in Paragraph 6 of the Counterclaim.

7. Dr. Mohannad Azzam is an adult resident of Alabama and is the Chief Medical Director of DMM. Azzam is also the founder of Azzam Medical Services, LLC ("AMS").

**ANSWER:** DMM admits the allegations contained in Paragraph 7 of the Counterclaim.

8. To the extent this Court finds it has jurisdiction over the Amended Complaint, this Court also has jurisdiction over the causes of action set forth in this Counterclaim, pursuant to 28 U.S.C. § 1332, as the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

**ANSWER:** DMM does not contest subject-matter jurisdiction at this time.

9. This Court has personal jurisdiction over the Counterclaim-Defendants due to their purposeful availment of the privilege of acting in Tennessee and intentionally causing the consequences described below, as well as through initiating the Amended Complaint before this Court.

**ANSWER:** DMM does not contest personal jurisdiction.

10. To the extent this Court finds it has jurisdiction over the Amended Complaint, venue is proper pursuant to 28 U.S.C. §§ 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district.

**ANSWER:** DMM does not contest venue.

11. The Freys and Azzam are properly joined to this Counterclaim as Counterclaim Defendants because they, like DMM, are necessary parties and must be joined as parties in this action pursuant to Fed. R. Civ. Proc. 19(a) because the Counterclaim Defendants jointly participated in the wrongful actions, detailed below, that defrauded The Platinum Group USA and Third Friday Fund and there are common questions of fact or law that require their joinder. As a result, in the absence of the joinder of the Freys or Azzam, this Court "cannot accord complete relief among existing parties," which pursuant to Rule 19(a)(1)(A) is the basis for mandatory joinder of parties.

**ANSWER:** The allegations contained in Paragraph 11 of the Counterclaim are not directed towards DMM; thus, no response is required. To the extent a response is required, DMM denies the allegations.

12. In the alternative, this Court has wide discretion to add the Counterclaim

Defendants pursuant to Fed. R. Civ. Proc. 20. Specifically, Rule 20(a)(2) holds that individuals "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

**ANSWER:** The allegations contained in Paragraph 11 of the Counterclaim are not directed towards DMM; thus, no response is required. To the extent a response is required, DMM denies the allegations.

### **Fraudulent Inducement**

13. During the diligence and negotiation of the potential acquisition of DMM by The Platinum Group USA, the Freys requested loans from Third Friday Fund in order to meet its payroll and other operational costs during this phase of Defendants' evaluation of a possible transaction with the Plaintiffs. In connection with the loan requests, the Freys and Azzam provided Third Friday Fund and The Platinum Group USA financial information and statements that purportedly supported the loan requests and information needed that purportedly addressed The Platinum Group USA's diligence inquiries with respect to the potential acquisition.

**ANSWER:** DMM denies the allegations contained in Paragraph 13 of the Counterclaim as stated. DMM admits that the overhead costs associated with its ongoing operations were absorbed by Third Friday Fund while the promised investment was pending. However, it was a fundamental and negotiated aspect to Third Friday Fund's loans to cover the overhead that all monies loaned by Third Friday Fund were to be repaid exclusively out of the large investment into DMM that Michael Lewitt and James Biden repeatedly represented was imminent and certain.

Defendant Americore Health, LLC, originally was going to cover DMM's overhead. Defendants Michael Lewitt and Jim Biden, however, directed DMM to stay away from Grant White and Americore, and represented that they (Lewitt and Biden) would assume DMM's overhead until they infused money from overseas. Representations of this sort were made numerous times by both Lewitt and Biden, as detailed in the Amended Complaint.

As represented by Defendant Lewitt, his plan of action was to remove Grant White from operational control, and for DMM/AMS to take over the operations of Americore's failing hospitals. (*See* August 24, 2018 Lewitt Email, attached as **Exhibit 1**.)

DMM admits that it provided all due diligence requested by Defendants and/or Counter-Plaintiffs, and that Defendant Lewitt expressed his satisfaction with the due diligence materials on multiple occasions. For example, attached as **Exhibit 2** is an email exchange from November of 2018 in which Defendant Lewitt requests—and Michael Frey provides—certain due diligence materials. Additional materials were provided by DMM at face-to-face meetings in the subsequent months.

14. Third Friday Fund agreed to make loans to DMM pursuant to the express terms of loan agreements entered into between Third Friday Fund and DMM. Third Friday Fund made the loans to DMM so that DMM could meet its payroll while the parties explored a potential investment in DMM by The Platinum Group USA.

**ANSWER:** DMM denies the allegations contained in Paragraph 14 of the Counterclaim as stated. DMM admits that the overhead costs associated with its ongoing operations were absorbed by Third Friday Fund while the promised investment was pending. However, it was a fundamental and negotiated aspect to Third Friday Fund's loans to cover the overhead that all monies loaned by Third Friday Fund were to be repaid exclusively out of the large investment into DMM that Michael Lewitt and James Biden repeatedly represented was imminent and certain. DMM was fraudulently induced to sign these loan agreements based on Defendants' promise that all loans would be repaid by the imminent and certain investment to be provided by Defendants.

15. While it was anticipated that the loans would be repaid upon a completion of an acquisition of DMM, such an acquisition was not a condition of loan repayment, as evident in the loan agreements. Contrary to Plaintiffs' implication in the Amended Complaint, there is no mention in any of the loan agreements that completion of an investment in DMM by The Platinum Group USA is a condition of repayment. DMM and Third Friday Fund agreed that all of the amounts loaned would be repaid based on the express terms of the loans.

**ANSWER:** DMM denies the allegations contained in Paragraph 15 of the Counterclaim. It was always agreed and understood that the exclusive source of repayment of the loans provided by Third Friday Fund was the investment Defendants were arranging for DMM, and that the investment was imminent and certain. DMM was fraudulently induced to sign these loans based on Defendants' promise that all loans would be repaid by the investment to be provided by Defendants.

16. Accordingly, between July 2018 and February 2019, Third Friday Fund loaned DMM at least $766,495 (collectively, "the Loan Agreements"), as detailed below:

| Date of Loan | Amount |
|---|---|
| July 30, 2018* | $100,000 |
| August 24, 2018* | $150,000 |
| September 10, 2018 | $3,500 |
| September 26, 2018* | $66,000 |
| October 10, 2018* | $49,000 |
| October 23, 2018* | $56,500 |
| November 8, 2018* | $57,000 |
| November 13, 2018 | $1,500 |
| November 20, 2018* | $49,000 |
| December 17, 2018* | $35,000 |
| December 20, 2018* | $32,000 |
| January 2, 2019* | $35,000 |
| January 16, 2019 | $35,000 |
| January 30, 2019 | $35,000 |
| February 1, 2019 | $20,000 |
| February 6, 2019 | $6,995 |
| February 13, 2019 | $35,000 |
| **TOTAL:** | **$766,495** |

**ANSWER:** DMM denies the allegations contained in Paragraph 16 of the Counterclaim, as it does not accurately reflect the amount of money that Third Friday Fund lent DMM. Some of the funds depicted in the chart contained in Paragraph 16 of the Counterclaim represent funds sent to third parties via DMM and its bank accounts in a structure fully agreed upon by DMM, Third Friday Fund, and James Biden in advance of the loans being made.

17. Most of the loans made by Third Friday Fund to DMM were evidenced by unsecured Loan Agreements; several loans were not memorialized in writing (the "<u>Undocumented Loans</u>") despite the parties' intention to memorialize them. The Loan Agreements denoted with an asterisk, above, are evidenced by unsecured Loan Agreements, attached as <u>Exhibits A through J</u> (the "<u>Documented Loan Agreements</u>").

**ANSWER:** The allegations contained in Paragraph 17 of the Amended Complaint are admitted to the extent that some loans were documented, while others were not. However, it was a fundamental and negotiated aspect to Third Friday Fund's loans to cover the overhead that all monies loaned by Third Friday Fund were to be repaid exclusively out of the large investment into DMM that Michael Lewitt and James Biden repeatedly represented was imminent and certain. DMM was fraudulently induced to sign these loan agreements based on Defendants' promise that all loans would be repaid by the imminent and certain investment to be provided by Defendants. The remaining allegations are denied.

18. In each of the Documented Loan Agreements, Third Friday Fund agreed to lend a principal amount of money to DMM in exchange for an interest rate equal to 6%. *See*, *e.g.*, <u>Exhibit A</u> at ¶ 2; <u>Exhibit B</u> at ¶ 2; <u>Exhibit C</u> at ¶ 2; <u>Exhibit D</u> at ¶ 2; <u>Exhibit E</u> at ¶ 2; <u>Exhibit F</u> at ¶ 2; <u>Exhibit G</u> at ¶ 2; <u>Exhibit H</u> at ¶ 2; <u>Exhibit I</u> at ¶ 2; <u>Exhibit J</u> at ¶ 2.

**ANSWER:** In response to the allegations contained in Paragraph 18 of the Counterclaim, DMM avers that the documents attached to the Counterclaim speak for themselves and are the best evidence of their contents. However, it was a fundamental and negotiated aspect to Third Friday Fund's loans to cover the overhead that all monies loaned by Third Friday Fund were to be repaid exclusively out of the large investment into DMM that Michael Lewitt and James Biden repeatedly represented was imminent and certain. DMM was fraudulently induced to sign these loan agreements based on Defendants' promise that all loans would be repaid by the imminent and certain investment to be provided by Defendants. The remaining allegations are denied.

19. Similarly, the Undocumented Loans were to bear 6% interest.

**ANSWER:** The allegations contained in Paragraph 19 of the Counterclaim are denied. Furthermore, it was a fundamental and negotiated aspect to Third Friday Fund's loans to cover the overhead that all monies loaned by Third Friday Fund were to be repaid exclusively out of the large investment into DMM that Michael Lewitt and James Biden repeatedly represented was imminent and certain. DMM was fraudulently induced to enter into any loans based on Defendants' promise that all loans would be repaid by investment to be provided by Defendants.

20. Each of the Documented Loan Agreements required DMM to make full repayment of the principal amount of the loan and any accrued but unpaid interest by no later than December 31, 2018. *See*, *e.g.*, Exhibit A at ¶ 3; Exhibit B at ¶ 3; Exhibit C at ¶ 3; Exhibit D at ¶ 3; Exhibit E at ¶ 3; Exhibit F at ¶ 3; Exhibit G at ¶ 3; Exhibit H at ¶ 3; Exhibit I at ¶ 3; Exhibit J at ¶ 3.

**ANSWER:** In response to the allegations contained in Paragraph 20 of the Counterclaim, DMM avers that the documents attached to the Counterclaim speak for themselves and are the best evidence of their contents. However, it was a fundamental and negotiated aspect to Third Friday Fund's loans to cover the overhead that all monies loaned by Third Friday Fund were to be repaid exclusively out of the large investment into DMM that Michael Lewitt and James Biden repeatedly represented was imminent and certain. DMM was fraudulently induced to enter into any loans based on Defendants' promise that all loans would be repaid by investment to be provided by Defendants. The remaining allegations are denied.

21. In each of the Documented Loan Agreements, DMM agreed that in the event of a failure to pay the principal or interest due, DMM would pay an additional 2% interest to Third Friday Fund. *See*, *e.g.*, Exhibit A at ¶ 7; Exhibit B at ¶ 7; Exhibit C at ¶ 7; Exhibit D at ¶ 7; Exhibit E at ¶ 7; Exhibit F at ¶ 7; Exhibit G at ¶ 7; Exhibit H at ¶ 7; Exhibit I at ¶ 7; Exhibit J at ¶ 7. The Undocumented Loans also provided for an additional 2% in default interest.

**ANSWER:** In response to the allegations contained in Paragraph 21 of the Counterclaim,

DMM avers that the documents attached to the Counterclaim speak for themselves and are the best evidence of their contents. However, it was a fundamental and negotiated aspect to Third Friday Fund's loans to cover the overhead that all monies loaned by Third Friday Fund were to be repaid exclusively out of the large investment into DMM that Michael Lewitt and James Biden repeatedly represented was imminent and certain. DMM was fraudulently induced to enter into any loans based on Defendants' promise that all loans would be repaid by investment to be provided by Defendants. The remaining allegations are denied.

22. Because the potential acquisition of DMM by The Platinum Group USA was subject to satisfactory due diligence and other contingencies as of the Maturity Date, including financing, on or about January 2, 2019, the Freys requested that the parties extend the Maturity Date on ten of the Undocumented Loans (that had been made as of that date) and the Documented Loan Agreements to January 31, 2019. *See* Exhibit K.

**ANSWER:** The allegations contained in Paragraph 22 of the Counterclaim are denied.

23. Upon information and belief, on or about December 2018 or January 2019, DMM acquired Geriatric Consulting Group ("GCG") and its sister company that handles management issues, Newcare, and concealed such acquisitions from Third Friday Fund and The Platinum Group USA until on or about April 23, 2019 when they first disclosed it during an all-hands teleconference involving the parties and their counsel. These acquisitions significantly increased DMM's payroll.

**ANSWER:** Admitted that DMM entered into a Memorandum of Understanding and Joint Venture agreement with GCG/Newcare in on February 1, 2019, but denied that DMM "concealed such acquisitions from Third Friday Fund and the Platinum Group USA." In fact, DMM acquired GCG/Newcare's providers—and other such lines of business—at the express direction of James Biden and Michael Lewitt. As Michael Frey walked into the GCG/Newcare offices to make the offer, he called James Biden to verify that he should purchase the entities; James Biden instructed Michael Frey to "Make the f[ ]king offer for three million—we are about to have more money than we can spend." Upon complying with Biden's instructions, DMM stayed in constant communication with Defendants regarding the progress of the provider acquisition, updated them

02542274 2                                       10

Case 4:19-cv-00046-CLC-CHS   Document 39   Filed 09/23/19   Page 10 of 18   PageID #: 647

weekly on the transition of the employees to the DMM roster, and became alarmed as the date of the new providers seeing patients drew closer without Defendants provided the funding that they had repeatedly promised was imminent and certain.

There are many documented conversations to this effect. For example, attached as **Exhibit 3** is a December 4, 2018, text message exchange between Michael Frey and Michael Lewitt in which Michael Frey reports on the transaction, stating, "I also now have New Care under the DMM umbrella which gives us 90 new homes."

Attached as **Exhibit 4** is a January 3, 2019, text exchange between Michael Frey and James Biden is which Michael Frey explains "it sounds like the valuations are gonna come back in good shape on the two practice [acquisitions]."

On February 13, 2019, Michael Frey texted Lewitt and explained "The 4500 monthly visits are being done now (started this week) and the owners of that company are literally blowing my phone up. That's tremendous revenue for us that we should be celebrating. I'm 100% on your side, have your back, and know you're busting your ass, but if these new NP's and MD's don't get taken care of I'm up shits creek. We literally took about $500k a month in biz from them. Man I'll shut up…I'm just really anxious and stressing today. Sorry." Attached as **Exhibit 5.**

24. During January and February 2019, Third Friday Fund continued to loan money to DMM, at the Freys' and Azzam's request – made without disclosing to Third Friday Fund and The Platinum Group USA that DMM had recently acquired Newcare and GCG – while The Platinum Group USA continued its diligence and worked toward closing the acquisition, as evidenced by additional Undocumented Loans.

**ANSWER:** DMM denies the allegations contained in Paragraph 24 of the Counterclaim. See response to Paragraph 23, above.

25. At the end of February 2019, Third Friday Fund stopped extending credit to DMM because the Freys and Azzam refused to provide The Platinum Group USA or Third Friday Fund with accurate financial due diligence materials or reasonable explanations why it

was still operating at a loss and could not meet its payroll. The Freys and Azzam refused to provide, among other information or documentation, tax returns or other historical and proforma financial information for its business. In retrospect, this is not surprising because the Freys and Azzam were trying desperately to conceal DMM's acquisitions of Newcare and GCG while scheming to receive funding to cover DMM's operating costs until the transaction with The Platinum Group USA closed.

**ANSWER:** DMM denies the allegations contained in Paragraph 25 of the Counterclaim. See response to Paragraph 23, above.

26. There were yet further negative developments. On March 28, 2019, in a text to Michael Lewitt, James Biden, and Amer Rustom (who, collectively, worked on behalf of the investor group regarding the potential acquisition of DMM), Frey and Azzam admitted that DMM was "in an insolvent position, and in a very precarious and serious situation with Medicare," threatened specious litigation, and announced the renewed involvement of Frank Zaccanelli, which that Frey and Azzam knew was categorically unacceptable to the potential investor group.

**ANSWER:** Admitted that, on March 28, 2019, Michael Frey sent the text message attached as **Exhibit 6** to Michael Lewitt, James Biden, and Amer Rustom, which speaks for itself and is the best evidence of its contents. The first two sentences of that text, which Counter-Plaintiffs slyly omit in Paragraph 26 of the Counterclaim, read: "Diverse Medical finds itself in [sic] after 10 months of dealing with your group, and the groups you represent, is that the multitude of promises and representation made, both in writing and in person, have not come to fruition. All of the communications that I have a record of and more importantly, relayed to my contacts established since or meetings began, have not materialized, which has now put my company and my employees in an insolvent position, and in a very precarious and serious situation with Medicare." In short, Michael Frey was detailing to Defendants the damage their fraud had caused.

As Defendants are aware, Michael Frey's comments concerned the GCG/NewCare acquisition, which DMM made at Defendants' express direction: specifically, the transition of the GCG/NewCare providers under the DMM umbrella. After multiple failed promises of funding closing dates, Michael Frey was nervous that it may incorrectly appear to regulatory agencies that

DMM had taken on the GCG employees without the necessary capital to absorb their overhead. Although DMM had entered into a joint venture to manage this line of business, until the other entity began receiving steady payments for the providers, DMM was responsible for the associated cost of the merger such as payroll.

This was the "precarious situation" that Michael Frey discussed with Michael Lewitt and Jim Biden two to three times a week leading up to the March text message. GCG providers are providing critical care to Medicare patients in nursing homes on a daily basis; obviously, this is a service line that DMM takes very seriously. The providers have Medicare numbers and state licenses, and as their managing partner, it is the duty of DMM to make sure those providers are paid for services rendered. This was the message Michael Frey was conveying to both Jim Biden and Michael Lewitt.

As to Mr. Zaccanelli, his involvement had ended nearly five months prior to the March text message that Michael Frey sent on behalf of DMM. Frey was communicating he intended to get consult Zaccanelli, who was present for the initial meetings and understood the dynamics of how this relationship unfolded.

27. The deal irreparably collapsed on April 23, 2019 after the Freys and Azzam disclosed <u>for the first time</u> to The Platinum Group USA and Third Friday Fund during a telephone call that DMM had entered a contract to purchase NewCare and GCG, in late 2018 or early 2019 without disclosing the terms of the transactions to The Platinum Group USA or Third Friday Fund. During that phone call, the Freys and Azzam, for the first time, disclosed that the NewCare/GCG acquisition would increase its monthly payroll by more than 300% beginning in late April 2019 (from $49,000/bi-monthly to $175,000/bi-monthly) and that the Freys and Azzam expected Third Friday Fund to loan DMM the funds to meet this new obligation on two days' notice.

**ANSWER:** DMM denies the allegations contained in Paragraph 27 of the Counterclaim. See response to Paragraph 23, above.

28. On April 25, 2019, Third Friday Fund sent a "Demand and Reservation of Rights" to DMM informing DMM of its default that resulted from DMM's "failure to pay any

amount of the principal or interest due on the Loans within five Business Days of the Maturity Dates." *See* Exhibit L at 2.

**ANSWER:** Admitted that the Third Friday Fund sent the document referenced in Paragraph 28 of the Counterclaim, and attached as Exhibit L to the Counterclaim, which speaks for itself and is the best evidence of its contents. Third Friday Fund's April 25, 2019, "Demand and Reservation of Rights" letter, however, was only sent in response to the claim letter transmitted one week earlier by Mitch Cohen, DMM's General Counsel, on April 18, 2019. (*See* Cohen Declaration, attached as **Exhibit 6;** Ex. 1 to Cohen Decl.)

29. DMM defaulted pursuant to the terms of each of the Loan Agreements by, among other things, failing to make any required interest or principal payments.

**ANSWER:** Admitted that DMM has not paid interest or principal on the Loan Agreements, but that is because Defendants failed to provide the promised investment. It was a fundamental and negotiated aspect to Third Friday Fund's loans to cover the overhead that all monies loaned by Third Friday Fund were to be repaid exclusively out of the large investment into DMM that Michael Lewitt and James Biden repeatedly represented was imminent and certain. DMM was fraudulently induced to enter into these loans based on Defendants' promise that all loans would be repaid by the imminent and certain investment to be provided by Defendants.

30. As Third Friday Fund informed DMM in the Demand and Reservation of Rights, "[Third Friday] is declaring all liabilities and obligations of [DMM] under the Accommodations immediately due and payable, including pursuant to the respective Sections 3 and 8(a) of the Loan Agreements." *Id*.

**ANSWER:** DMM denies the allegations contained in Paragraph 30 of the Counterclaim. See Response to Paragraph 28 of the Counterclaim, above.

31. DMM has not made any payments of interest or principal since receipt of the Demand and Reservation of Rights nor has it made any effort to contact Third Friday Fund to discuss the loans.

**ANSWER:** Admitted that DMM has not paid interest or principal on the Loan Agreements, but denied that DMM has not made any effort to contact Third Friday Fund to discuss the loans. As Counter-Plaintiffs are well aware, the parties entered into global settlement discussions months ago, which were unsuccessful.

32. The Freys and Azzam made numerous false statements concerning materials facts, or concealed material facts, including but not limited to (i) overstating the extent and strength of DMM's business operations; (ii) misrepresenting Frank Zaccanelli's involvement in the transaction; (iii) failing to provide satisfactory due diligence relating to the cost structure and operating losses of DMM; and (iv) concealing the acquisition of Newcare and GCG and the operational expenses associated with such transactions.

**ANSWER:** The allegations contained in Paragraph 32 of the Counterclaim are not directed towards DMM; thus, no response is required. To the extent a response is required, DMM denies the allegations.

33. The Freys and Azzam knew that such statements were false (or that such omissions were material) or had utter disregard for the truth of such statement.

**ANSWER:** The allegations contained in Paragraph 33 of the Counterclaim are not directed towards DMM; thus, no response is required. To the extent a response is required, DMM denies the allegations.

34. The Freys and Azzam made such statements or concealed material information with the intent to induce Third Friday Fund's reliance on the statements and/or omissions.

**ANSWER:** The allegations contained in Paragraph 34 of the Counterclaim are not directed towards DMM; thus, no response is required. To the extent a response is required, DMM denies the allegations.

35. The Freys and Azzam made such statement or concealed material information with the intent to induce The Platinum Group USA's reliance on the statements and/or omissions.

**ANSWER:** The allegations contained in Paragraph 35 of the Counterclaim are not directed towards DMM; thus, no response is required. To the extent a response is required, DMM denies the allegations.

36. Third Friday Fund reasonably relied on such statements and/or omissions.

**ANSWER:** The allegations contained in Paragraph 36 of the Counterclaim are not directed towards DMM; thus, no response is required. To the extent a response is required, DMM denies the allegations.

37. Third Friday Fund has been harmed in an amount of not less than $766,495, plus interest, attorneys' fees and other costs, in an amount to be proved at trial.

**ANSWER:** DMM denies the allegations contained in Paragraph 37 of the Counterclaim.

38. The Platinum Group USA reasonably relied on such statement and/or omissions.

**ANSWER:** The allegations contained in Paragraph 38 of the Counterclaim are not directed towards DMM; thus, no response is required. To the extent a response is required, DMM denies the allegations.

39. The Platinum Group USA has been harmed in amount to be proved at trial.

**ANSWER:** DMM denies the allegations contained in Paragraph 39 of the Counterclaim.

40. To the extent the section of the Counterclaim entitled "Prayer for Relief" requires a response, DMM denies that Counter-Plaintiffs are entitled to any relief.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden that it would not otherwise bear, DMM asserts the following defenses to the Counterclaim.

### First Defense

The Counterclaim fails to state a claim upon which relief may be granted.

### Second Defense

Counter-Plaintiffs' claims are barred by their own fraud and/or the doctrine of unclean hands. DMM was fraudulently induced to enter into the loan agreements by Defendants repeated promises of imminent and certain of investment.

### Third Defense

Counter-Plaintiffs are not entitled to receive punitive damages because Counter-Plaintiffs have not pleaded facts sufficient to support such an award.

### Fourth Defense

Counter-Plaintiffs are estopped from recovering in this action. The parties conditioned the repayment of the loans on the investment into DMM that Defendants repeatedly promised was certain and imminent.

### Fifth Defense

To the extent Counter-Plaintiffs are attempting to claim fraud, those claims should be dismissed because the Counterclaim fails to state with particularity the circumstances allegedly constituting fraud.

Respectfully submitted,

/s/ Robert A. Peal
Robert A. Peal
Mark W. Lenihan
SIMS|FUNK, PLC
3322 West End Avenue, Suite #200
Nashville, Tennessee 37203
(615) 292-9335
rpeal@simsfunk.com
mlenihan@simsfunk.com

*Counsel for Diverse Medical Management, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and exact copy of the foregoing was served on the following via email and/or the Court's CM/ECF system:

J Scott Hickman
Lee Webb Campbell , II
Sherrard Roe Voigt & Harbison, PLC
150 3rd Avenue South
Suite 1100
Nashville, TN 37201
615-742-4200
Fax: 615-742-4539
shickman@sherrardroe.com
wcampbell@srvhlaw.com

George R Mesires
Joan A Akalaonu
Faegre Baker Daniels LLP (IL)
311 South Wacker Drive, Suite 4300
Chicago, IL 60606
312-356-5101
george.mesires@faegrebd.com
joan.akalaonu@faegrebd.com

Yasmin N Best
Faegre Baker Daniels LLP (CA)
11766 Wilshire Blvd, Ste 750
Los Angeles, CA 90025
yasmin.best@faegrebd.com

      And on the following via Certified Mail and U.S. Mail:

Americore Health LLC
c/o Juan Ruiz
3048 SW 129 Terrace
Miramar, FL 33027

On this the 23rd day of September, 2019.

                                      /s/ Robert A. Peal