IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| DIVERSE MEDICAL MANAGEMENT, INC.; AND AZZAM MEDICAL SERVICES, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>PLATINUM GROUP USA, INC.; AMER RUSTOM; MICHAEL LEWITT, AMERICORE HEALTH, LLC, GRANT WHITE, JAMES B. BIDEN,<br><br>    Defendants.<br>------------------------------------------------<br>PLATINUM GROUP USA, INC.;<br><br>    Counterclaim Plaintiffs,<br><br>v.<br><br>DIVERSE MEDICAL MANAGEMENT, INC.; MICHAEL FREY; NATALIE FREY; AND MOHANNAD AZZAM,<br><br>    Counterclaim Defendants. | Case No: 19-CV-00046<br>JURY DEMAND |

**MICHAEL FREY, NATALIE FREY, AND MOHANNAD AZZAM'S
<u>REPLY TO COUNTERCLAIM OF PLATINUM GROUP USA, INC.</u>**

For its Reply to the Counterclaim filed by Counter-Plaintiff The Platinum Group USA ("Platinum"),[1] Counter-Defendants Michael Frey, Natalie Frey, and Mohannad Azzam (the "Individual Counter-Defendants") state and allege as follows:

---

[1] The Third Friday Total Return Fund, L.P. also filed counterclaims against the Individual Counter-Defendants, but has subsequently been dismissed from this lawsuit following settlement of all claims.

## INTRODUCTION AND GENERAL DENIAL

Platinum's counterclaims against the Individual Counter-Defendants are a meritless effort to bully and intimidate individuals taking a stand against abuse, corruption, and fraud. On their face, Platinum's claims are divorced from reality, bereft of factual support, and regularly contradicted by oral and written statements of codefendants Michael Lewitt and James Biden. At no point during the extensive due diligence process did Platinum Group express concern about the Individual Counter-Defendants' roles or the information provided. Additionally, as he well knows, Defendant James Biden explicitly directed Michael Frey and DMM to purchase GCG/New Care. Platinum's gross mischaracterization of a text message between Michael Frey and Defendants Biden, Lewitt, and Rustom—sent well after Defendants had already inflicted the damage from their fraud—only reinforces the weakness of Platinum's counterclaim.

Finally, Third Friday Fund's dismissal from this suit further undercuts any counterclaim asserted by Platinum Group alone. The already threadbare allegations in the counterclaim concerning the Individual Counter-Defendants were almost entirely focused on DMM's relationship with the Third Friday Fund.

## RESPONSE TO NUMBERED ALLEGATIONS

1. Platinum Group USA, Inc. ("The Platinum Group USA") and the Third Friday Total Return Fund, L.P. ("Third Friday Fund") (collectively, the "Counterclaim Plaintiffs") assert this counterclaim pursuant to Fed. R. Civ. Proc. 13, 19, and 20.

**ANSWER:** The Individual Counter-Defendants admit that Counter-Plaintiffs file their Counterclaim pursuant to Fed. R. Civ. P. 13, but deny that Rules 19 and 20 have any applicability as to the alleged claim against the Individual Counter-Defendants.

2. The Platinum Group USA is a corporation organized and existing under the laws of Florida with its principal place of business in Delray Beach, Florida.

**ANSWER:** Upon information and belief, the Individual Counter-Defendants admit the allegations contained in Paragraph 2 of the Counterclaim.

3. Third Friday Fund is a limited partnership organized and existing under the laws of Delaware with its principal place of business in Delray Beach, Florida.

**ANSWER:** Upon information and belief, the Individual Counter-Defendants admit the allegations contained in Paragraph 3 of the Counterclaim.

4. Diverse Medical Management, Inc. ("DMM") is a Tennessee corporation organized and existing under the laws of Tennessee with its principal place of business in McMinnville, Tennessee.

**ANSWER:** The Individual Counter-Defendants admit the allegations contained in Paragraph 4 of the Counterclaim.

5. Defendant Michael Frey is an adult resident of Tennessee and is the President and Chief Executive Officer of DMM.

**ANSWER:** The Individual Counter-Defendants admit the allegations contained in Paragraph 5 of the Counterclaim

6. Defendant Natalie Frey is an adult resident of Tennessee and is Executive Vice President – Strategic Planning of DMM.

**ANSWER:** The Individual Counter-Defendants admit the allegations contained in Paragraph 6 of the Counterclaim

7. Dr. Mohannad Azzam is an adult resident of Alabama and is the Chief Medical Director of DMM. Azzam is also the founder of Azzam Medical Services, LLC ("AMS").

**ANSWER:** The Individual Counter-Defendants admit the allegations contained in Paragraph 7 of the Counterclaim

8. To the extent this Court finds it has jurisdiction over the Amended Complaint, this Court also has jurisdiction over the causes of action set forth in this Counterclaim, pursuant to 28 U.S.C. § 1332, as the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

**ANSWER:** The Individual Counter-Defendants do not contest subject-matter

jurisdiction.

9. This Court has personal jurisdiction over the Counterclaim-Defendants due to their purposeful availment of the privilege of acting in Tennessee and intentionally causing the consequences described below, as well as through initiating the Amended Complaint before this Court.

**ANSWER:** The Individual Counter-Defendants do not contest personal jurisdiction.

10. To the extent this Court finds it has jurisdiction over the Amended Complaint, venue is proper pursuant to 28 U.S.C. §§ 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district.

**ANSWER:** The Individual Counter-Defendants do not contest venue.

11. The Freys and Azzam are properly joined to this Counterclaim as Counterclaim Defendants because they, like DMM, are necessary parties and must be joined as parties in this action pursuant to Fed. R. Civ. Proc. 19(a) because the Counterclaim Defendants jointly participated in the wrongful actions, detailed below, that defrauded The Platinum Group USA and Third Friday Fund and there are common questions of fact or law that require their joinder. As a result, in the absence of the joinder of the Freys or Azzam, this Court "cannot accord complete relief among existing parties," which pursuant to Rule 19(a)(1)(A) is the basis for mandatory joinder of parties.

**ANSWER:** The Individual Counter-Defendants deny that they are necessary parties

pursuant to Rule 19(a).

12. In the alternative, this Court has wide discretion to add the Counterclaim Defendants pursuant to Fed. R. Civ. Proc. 20. Specifically, Rule 20(a)(2) holds that individuals "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

**ANSWER:** The Individual Counter-Defendants deny that they may be added to this action

pursuant to Rule 20(a)(2) because Platinum fails to assert a right of relief against them and fails

to raise any question of law or fact related to them.

### Fraudulent Inducement

13. During the diligence and negotiation of the potential acquisition of DMM by The Platinum Group USA, the Freys requested loans from Third Friday Fund in order to meet its payroll and other operational costs during this phase of Defendants' evaluation of a possible

transaction with the Plaintiffs. In connection with the loan requests, the Freys and Azzam provided Third Friday Fund and The Platinum Group USA financial information and statements that purportedly supported the loan requests and information needed that purportedly addressed The Platinum Group USA's diligence inquiries with respect to the potential acquisition.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 13 of the Counterclaim as stated. The Individual Counter-Defendants admit that Third Friday Fund paid overhead costs while promised investment in DMM was pending, but repayment of these overhead costs was explicitly premised on investment from Defendants. The Individual Counter-Defendants admit DMM provided all due diligence requested by Defendants and/or Counter-Plaintiffs, and that Defendant Lewitt expressed his satisfaction with the due diligence materials on multiple occasions. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) The Individual Counter-Defendants deny that Platinum was a party to the loans made by Third Friday Fund to cover overhead. The Individual Counter-Defendants deny all remaining allegations contained in Paragraph 13.

14. Third Friday Fund agreed to make loans to DMM pursuant to the express terms of loan agreements entered into between Third Friday Fund and DMM. Third Friday Fund made the loans to DMM so that DMM could meet its payroll while the parties explored a potential investment in DMM by The Platinum Group USA.

**ANSWER:** The allegations in Paragraph 14 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

15. While it was anticipated that the loans would be repaid upon a completion of an acquisition of DMM, such an acquisition was not a condition of loan repayment, as evident in the loan agreements. Contrary to Plaintiffs' implication in the Amended Complaint, there is no mention in any of the loan agreements that completion of an investment in DMM by The Platinum Group USA is a condition of repayment. DMM and Third Friday Fund agreed that all of the amounts loaned would be repaid based on the express terms of the loans.

**ANSWER:** The allegations in Paragraph 15 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

16. Accordingly, between July 2018 and February 2019, Third Friday Fund loaned DMM at least $766,495 (collectively, "the Loan Agreements"), as detailed below:

| Date of Loan | Amount |
|---|---|
| July 30, 2018* | $100,000 |
| August 24, 2018* | $150,000 |
| September 10, 2018 | $3,500 |
| September 26, 2018* | $66,000 |
| October 10, 2018* | $49,000 |
| October 23, 2018* | $56,500 |
| November 8, 2018* | $57,000 |
| November 13, 2018 | $1,500 |
| November 20, 2018* | $49,000 |
| December 17, 2018* | $35,000 |
| December 20, 2018* | $32,000 |
| January 2, 2019* | $35,000 |
| January 16, 2019 | $35,000 |
| January 30, 2019 | $35,000 |
| February 1, 2019 | $20,000 |
| February 6, 2019 | $6,995 |
| February 13, 2019 | $35,000 |
| **TOTAL:** | **$766,495** |

**ANSWER:** The allegations in Paragraph 16 are not directed toward the Individual Counter-Defendants; thus, no response is required Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

17. Most of the loans made by Third Friday Fund to DMM were evidenced by unsecured Loan Agreements; several loans were not memorialized in writing (the "Undocumented Loans") despite the parties' intention to memorialize them. The Loan Agreements denoted with an asterisk, above, are evidenced by unsecured Loan Agreements, attached as Exhibits A through J (the "Documented Loan Agreements").

**ANSWER:** The allegations in Paragraph 17 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

18. In each of the Documented Loan Agreements, Third Friday Fund agreed to lend a principal amount of money to DMM in exchange for an interest rate equal to 6%. *See*, *e.g.*, Exhibit A at ¶ 2; Exhibit B at ¶ 2; Exhibit C at ¶ 2; Exhibit D at ¶ 2; Exhibit E at ¶ 2; Exhibit F at ¶ 2; Exhibit G at ¶ 2; Exhibit H at ¶ 2; Exhibit I at ¶ 2; Exhibit J at ¶ 2.

**ANSWER:** The allegations in Paragraph 18 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

19. Similarly, the Undocumented Loans were to bear 6% interest.

**ANSWER:** The allegations in Paragraph 19 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

20. Each of the Documented Loan Agreements required DMM to make full repayment of the principal amount of the loan and any accrued but unpaid interest by no later than December 31, 2018. *See*, *e.g.*, Exhibit A at ¶ 3; Exhibit B at ¶ 3; Exhibit C at ¶ 3; Exhibit D at ¶ 3; Exhibit E at ¶ 3; Exhibit F at ¶ 3; Exhibit G at ¶ 3; Exhibit H at ¶ 3; Exhibit I at ¶ 3; Exhibit J at ¶ 3.

**ANSWER:** The allegations in Paragraph 20 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

21. In each of the Documented Loan Agreements, DMM agreed that in the event of a failure to pay the principal or interest due, DMM would pay an additional 2% interest to Third Friday Fund. *See*, *e.g.*, Exhibit A at ¶ 7; Exhibit B at ¶ 7; Exhibit C at ¶ 7; Exhibit D at ¶ 7; Exhibit E at ¶ 7; Exhibit F at ¶ 7; Exhibit G at ¶ 7; Exhibit H at ¶ 7; Exhibit I at ¶ 7; Exhibit J at ¶ 7. The Undocumented Loans also provided for an additional 2% in default interest.

**ANSWER:** The allegations in Paragraph 21 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

22. Because the potential acquisition of DMM by The Platinum Group USA was subject to satisfactory due diligence and other contingencies as of the Maturity Date, including financing, on or about January 2, 2019, the Freys requested that the parties extend the Maturity Date on ten of the Undocumented Loans (that had been made as of that date) and the Documented Loan Agreements to January 31, 2019. *See* Exhibit K.

**ANSWER:** Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) The allegations contained in Paragraph 22 of the Counterclaim are denied.

23. Upon information and belief, on or about December 2018 or January 2019, DMM acquired Geriatric Consulting Group ("GCG") and its sister company that handles management issues, New Care, and concealed such acquisitions from Third Friday Fund and The Platinum Group USA until on or about April 23, 2019 when they first disclosed it during an all-hands teleconference involving the parties and their counsel. These acquisitions significantly increased DMM's payroll.

**ANSWER:** The allegations in Paragraph 23 are not directed toward the Individual Counter-Defendants; thus, no response is required. To the extent a response is required, the Individual Counter-Defendants deny the allegations.

24. During January and February 2019, Third Friday Fund continued to loan money to DMM, at the Freys' and Azzam's request – made without disclosing to Third Friday Fund and The Platinum Group USA that DMM had recently acquired New Care and GCG – while The Platinum Group USA continued its diligence and worked toward closing the acquisition, as evidenced by additional Undocumented Loans.

**ANSWER:** The Individual Counter-Defendants admit that the Third Friday Fund loaned money was loaned to DMM in January and February 2019, but Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) The Individual Counter-Defendants deny all other allegations contained in Paragraph 24 of the Counterclaim.

25. At the end of February 2019, Third Friday Fund stopped extending credit to DMM because the Freys and Azzam refused to provide The Platinum Group USA or Third Friday Fund with accurate financial due diligence materials or reasonable explanations why it was still operating at a loss and could not meet its payroll. The Freys and Azzam refused to provide, among other information or documentation, tax returns or other historical and proforma financial information for its business. In retrospect, this is not surprising because the Freys and Azzam were trying desperately to conceal DMM's acquisitions of New Care and GCG while scheming to receive funding to cover DMM's operating costs until the transaction with The Platinum Group USA closed.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 25 of the Counterclaim. Further, Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.)

26. There were yet further negative developments. On March 28, 2019, in a text to Michael Lewitt, James Biden, and Amer Rustom (who, collectively, worked on behalf of the investor group regarding the potential acquisition of DMM), Frey and Azzam admitted that DMM was "in an insolvent position, and in a very precarious and serious situation with Medicare," threatened specious litigation, and announced the renewed involvement of Frank Zaccanelli, which that Frey and Azzam knew was categorically unacceptable to the potential investor group.

**ANSWER:** Admitted that, on March 28, 2019, Individual Counter-Defendant Michael Frey sent the text message attached as **Exhibit 1** to Michael Lewitt, James Biden, and Amer Rustom, which speaks for itself and is the best evidence of its contents. The first two sentences of that text, which Counter-Plaintiffs slyly omit in Paragraph 26 of the Counterclaim, read: "Diverse Medical finds itself in [sic] after 10 months of dealing with your group, and the groups you represent, is that the multitude of promises and representation made, both in writing and in person, have not come to fruition. All of the communications that I have a record of and more importantly,

02543377 2                                             9

Case 4:19-cv-00046-CLC-CHS   Document 61   Filed 11/22/19   Page 9 of 15   PageID #: 800

relayed to my contacts established since or meetings began, have not materialized, which has now put my company and my employees in an insolvent position, and in a very precarious and serious situation with Medicare." In short, Michael Frey was detailing to Defendants the damage their fraud had caused.

As Defendants are aware, Michael Frey's comments concerned the GCG/New Care acquisition, which DMM made at Defendants' express direction: specifically, the transition of the GCG/New Care providers under the DMM umbrella. After multiple failed promises of funding closing dates, Michael Frey was nervous that it may incorrectly appear to regulatory agencies that DMM had taken on the GCG employees without the necessary capital to absorb their overhead. Although DMM had entered into a joint venture to manage this line of business, until the other entity began receiving steady payments for the providers, DMM was responsible for the associated cost of the merger such as payroll.

This was the "precarious situation" that Michael Frey discussed with Michael Lewitt and Jim Biden two to three times a week leading up to the March text message. GCG providers are providing critical care to Medicare patients in nursing homes on a daily basis; obviously, this is a service line that DMM takes very seriously. The providers have Medicare numbers and state licenses, and as their managing partner, it is the duty of DMM to make sure those providers are paid for services rendered. This was the message Michael Frey was conveying to both Jim Biden and Michael Lewitt.

As to Mr. Zaccanelli, his involvement had ended nearly five months prior to the March text message that Michael Frey sent on behalf of DMM. Frey was communicating he intended to consult Zaccanelli, who was present for the initial meetings and understood the dynamics of how this relationship unfolded.

To the extent any allegations in Paragraph 26 remain unanswered, the Individual Counter-Defendants deny them.

27. The deal irreparably collapsed on April 23, 2019 after the Freys and Azzam disclosed <u>for the first time</u> to The Platinum Group USA and Third Friday Fund during a telephone call that DMM had entered a contract to purchase New Care and GCG, in late 2018 or early 2019 without disclosing the terms of the transactions to The Platinum Group USA or Third Friday Fund. During that phone call, the Freys and Azzam, for the first time, disclosed that the New Care/GCG acquisition would increase its monthly payroll by more than 300% beginning in late April 2019 (from $49,000/bi-monthly to $175,000/bi-monthly) and that the Freys and Azzam expected Third Friday Fund to loan DMM the funds to meet this new obligation on two days' notice.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 27 of the Counterclaim.

28. On April 25, 2019, Third Friday Fund sent a "Demand and Reservation of Rights" to DMM informing DMM of its default that resulted from DMM's "failure to pay any amount of the principal or interest due on the Loans within five Business Days of the Maturity Dates." *See* Exhibit L at 2.

**ANSWER:** The allegations in Paragraph 28 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

29. DMM defaulted pursuant to the terms of each of the Loan Agreements by, among other things, failing to make any required interest or principal payments.

**ANSWER:** The allegations in Paragraph 29 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

30. As Third Friday Fund informed DMM in the Demand and Reservation of Rights, "[Third Friday] is declaring all liabilities and obligations of [DMM] under the Accommodations immediately due and payable, including pursuant to the respective Sections 3 and 8(a) of the Loan Agreements." *Id*.

**ANSWER:** The allegations in Paragraph 30 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

31. DMM has not made any payments of interest or principal since receipt of the Demand and Reservation of Rights nor has it made any effort to contact Third Friday Fund to discuss the loans.

**ANSWER:** The allegations in Paragraph 31 are not directed toward the Individual Counter-Defendants; thus, no response is required. Third Friday Fund has been dismissed from this lawsuit as have all of its claims. (Doc. No. 52.) To the extent a response is required, the Individual Counter-Defendants deny the allegations.

32. The Freys and Azzam made numerous false statements concerning materials facts, or concealed material facts, including but not limited to (i) overstating the extent and strength of DMM's business operations; (ii) misrepresenting Frank Zaccanelli's involvement in the transaction; (iii) failing to provide satisfactory due diligence relating to the cost structure and operating losses of DMM; and (iv) concealing the acquisition of New Care and GCG and the operational expenses associated with such transactions.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 32 and incorporate their responses to Paragraph 27 of the Counterclaim.

33. The Freys and Azzam knew that such statements were false (or that such omissions were material) or had utter disregard for the truth of such statement.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 33 and incorporate their responses to Paragraph 27 of the Counterclaim.

34. The Freys and Azzam made such statements or concealed material information with the intent to induce Third Friday Fund's reliance on the statements and/or omissions.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 34 and incorporate their responses to Paragraph 27 of the Counterclaim. Additionally,

the Third Friday Fund has been dismissed from this lawsuit as have all of its claims (Doc. No. 52.); therefore, these allegations are moot.

35. The Freys and Azzam made such statement or concealed material information with the intent to induce The Platinum Group USA's reliance on the statements and/or omissions.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 35 and incorporate their responses to Paragraph 27 of the Counterclaim.

36. Third Friday Fund reasonably relied on such statements and/or omissions.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 36 and incorporate their responses to Paragraph 27 of the Counterclaim. Additionally, the Third Friday Fund has been dismissed from this lawsuit as have all of its claims (Doc. No. 52.); therefore, these allegations are moot.

37. Third Friday Fund has been harmed in an amount of not less than $766,495, plus interest, attorneys' fees and other costs, in an amount to be proved at trial.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 37. Additionally, the Third Friday Fund has been dismissed from this lawsuit as have all of its claims (Doc. No. 52.); therefore, these allegations are moot.

38. The Platinum Group USA reasonably relied on such statement and/or omissions.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 38 and incorporate their responses to Paragraph 27 of the Counterclaim.

39. The Platinum Group USA has been harmed in amount to be proved at trial.

**ANSWER:** The Individual Counter-Defendants deny the allegations contained in Paragraph 39.

40. To the extent the section of the Counterclaim entitled "Prayer for Relief" requires a response, the Individual Counter-Plaintiffs deny that Counter-Plaintiffs are entitled to any relief.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden that it would not otherwise bear, the Individual Counter-Defendants assert the following defenses to the Counterclaim.

### First Defense

The Counterclaim fails to state a claim upon which relief may be granted.

### Second Defense

Counter-Plaintiffs' claims are barred by their own fraud and/or the doctrine of unclean hands. The Individual Counter-Defendants were fraudulently induced to enter into the due diligence period and to forgo alternative opportunities by Defendants' repeated promises of imminent and certain of investment.

### Third Defense

Counter-Plaintiffs are not entitled to receive punitive damages because Counter-Plaintiffs have not pleaded facts sufficient to support such an award.

### Fourth Defense

Counter-Plaintiffs are estopped from recovering in this action. The parties conditioned the repayment of the loans on the investment into DMM that Defendants repeatedly promised was certain and imminent.

### Fifth Defense

To the extent Counter-Plaintiffs are attempting to claim fraud, those claims should be dismissed because the Counterclaim fails to state with particularity the circumstances allegedly constituting fraud.

Respectfully submitted,

/s/ Robert A. Peal
Robert A. Peal
Mark W. Lenihan
SIMS|FUNK, PLC
3322 West End Avenue, Suite #200
Nashville, Tennessee 37203
(615) 292-9335
rpeal@simsfunk.com
mlenihan@simsfunk.com

*Counsel for Plaintiffs/Counter-Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served on the following via email and/or the Court's CM/ECF system:

George R. Mesires
Joan A. Akalaonu
Faegre Baker Daniels LLP (IL)
311 South Wacker Drive, Suite 4300
Chicago, IL 60606
312-356-5101
george.mesires@faegrebd.com
joan.akalaonu@faegrebd.com

Yasmin N. Best
Faegre Baker Daniels LLP (CA)
11766 Wilshire Blvd, Ste 750
Los Angeles, CA 90025
yasmin.best@faegrebd.com

David R. Smith
Law Office of David Randolph Smith and Associates
1913 21st Avenue South
Nashville, TN 37212
615-742-1775
Fax: 615-742-1223
drs@drslawfirm.com

Jared A. Cox
W. Aaron Marcus
Bingham Greenebaum Doll LLP (Louisville)
3500 PNC Tower
101 S. Fifth Street
Louisville, KY 40202
JCox@bgdlegal.com
AMarcus@bgdlegal.com
JIrving@bgdlegal.com

On this the 22nd day of November, 2019.

/s/ Robert A. Peal

02543377 2                                  15

Case 4:19-cv-00046-CLC-CHS   Document 61   Filed 11/22/19   Page 15 of 15   PageID #: 806